# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| **BALFOUR LAND COMPANY, L.P.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 7:08-cv-34 (HL) |
| | : | |
| **UNITED STATES OF** | : | |
| **AMERICA, UNITED STATES** | : | |
| **DEPARTMENT OF AGRICULTURE,** | : | |
| **and FARM SERVICES AGENCY,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

# ORDER

This matter is before the Court on the cross-motions for summary judgment of Plaintiff Balfour Land Company, L.P. and Defendants United States of America, United States Department of Agriculture, and Farm Service Agency.[1]  In its Motion for Summary Judgment (Doc. 29), Defendants contend that they are entitled to judgment as a matter of law as to all claims against them.  Plaintiff has countered with its own Motion for Summary Judgment (Doc. 31), in which it contends it is entitled to judgment against Defendants as a matter of law.  After review of the pleadings, the discovery and disclosure materials on file, and the administrative

---

[1]Clara Dunbar, a Farm Service Agency employee, was named as a defendant in Plaintiff's amended complaint.  On May 23, 2008, a Notice of Substitution of Party Defendant was filed in which the United States was substituted under the Westfall Act, 28 U.S.C. § 2679, for Ms. Dunbar as a defendant with respect to the claims raised against her in the amended complaint.

record of the United States Department of Agriculture National Appeals Division, the Court denies the motion of Plaintiff and grants the motion of Defendants.

## I.    FACTS

This case involves the USDA's Conservation Reserve Program ("CRP"), under which the Commodity Credit Corporation ("CCC") enters into 10-year contracts with eligible participants to convert eligible land to a conserving use in return for financial and technical assistance.  7 CFR §§ 1410.3(a), 1410.7(a).  One of the main objectives of the CRP is to cost-effectively reduce water and wind erosion.  7 CFR § 1410.3(c).  The property owner is required to implement a conservation plan that complies with CCC guidelines and has been approved by the conservation district for the land to be entered in the CRP.  7 CFR § 1410.22(a).

An appendix containing the contract's terms and conditions is attached to each CRP contract.  The program is also governed by 16 U.S.C. §§ 3831-3836 and Part 1410 of Title 7 of the Code of Federal Regulations.  If there are any conflicts between the terms in the appendix and the regulations, the regulations control.

Balfour Land Company, L.P. is a Georgia limited partnership.  Georgia Land Holdings, Inc., a Georgia corporation, is the general partner of Balfour.[2]  Ira Lee, Jr. ("Mr. Lee"), also known as Sonny Lee, is president of Georgia Land Holdings, Inc., which in effect also makes him the president of Balfour.

───────────────────

[2]Balfour Land Company, L.P. and Georgia Land Holdings, Inc. will be collectively referred to as Plaintiff for purposes of this Order.

Prior to the occurrences which make up the basis for this lawsuit, Plaintiff owned real property located in Thomas and Brooks Counties, known as the "Disston Place," consisting of approximately 5,000 acres. The Farm Serial Number ("FSN") assigned by the Farm Service Agency ("FSA")[3] for the Disston Place was 539.

Prior to September 21, 2004, there were three CRP contracts related to the Disston Place. These were (1) Contract 147 on Tract 241 for 25.6 acres dated September 22, 1995, with an expiration date of September 30, 2005; (2) Contract 305 on Tract 236 for 16.6 acres dated June 9, 2003, with an expiration date of September 30, 2018; and (3) Contract 306 on Tract 241 for 86.6 acres dated June 9, 2003, with an expiration date of September 30, 2018. On September 21, 2004, Mr. Lee signed a re-enrollment of Contract 147, which was scheduled to expire on September 30, 2005. The re-enrollment contract was designated as Contract 334, which had an effective date of October 1, 2005, and an expiration date of September 30, 2018. Contracts 147, 305, 306, and 334 were considered by the FSA to be four separate contracts.

On October 21, 2004, Plaintiff sold the Disston Place to Booth Disston North, LLC and Booth Disston Properties, LLC, both Georgia limited liability companies.[4]

_____

[3]The Farm Service Agency is part of the United States Department of Agriculture.

[4]Booth Disston North, LLC and Booth Disston Properties, LLC will be referred to collectively as Booth for purposes of this Order.

Hurley Booth, the manager of Booth, and Mr. Lee, representing Plaintiff, both attended the October 21, 2004 closing of the sale of the Disston Place to Booth.

No writings or documents generated at or for the closing specifically provided that Booth would assume the CRP contracts then governing the Disston Place. Mr. Lee made a personal visit to the FSA office in Thomasville, Georgia on the date of the closing. During that visit, Mr. Lee informed the FSA of the sale of the Disston Place and that Booth intended to assume the CRP contracts.

On January 11, 2005, Richard Small, an agent for Booth, met with FSA program technician Clara Dunbar at the Thomasville FSA office. Mr. Small paid the FSA $318.46 on behalf of Booth. This payment represented liquidated damages to the FSA for the cancellation of Contract 334, which was the re-enrollment of the land previously the subject of Contract 147. The FSA did not ask for Plaintiff's consent prior to terminating Contract 334. During that meeting, Mr. Small was told about the other CRP contracts, and he allegedly said that he knew only of Contract 334. Booth was not required by the FSA to assume Contracts 147, 305, or 306 at that time.

On or about May 31, 2005, Ms. Dunbar informed Plaintiff that Contracts 147, 305, and 306 were still in effect. This was because Booth had not assumed or become Plaintiff's successor in interest to the contracts.

On or about June 9, 2005, a representative of Plaintiff faxed two warranty deeds to the FSA showing that Plaintiff had sold the Disston Place on October 21, 2004. The warranty deeds were supplied to the FSA in response to a previous call

4

to Mr. R.C. Balfour, III, a partner in Plaintiff, from the FSA about another matter pertaining to FSN 539.  In that call, Mr. Balfour stated that the property had been sold and the FSA should contact Mr. Lee.

On or about August 22, 2006, Mr. Lee contacted the FSA and stated that a Mr. Whitfield would be coming to the FSA on that date on behalf of Booth to inquire about Contracts 147, 305, and 306.  Mr. Whitfield did not appear.  The FSA attempted to contact Mr. Whitfield on August 31, September 1, and September 6, 2006 via a cell phone number supplied by Mr. Lee.  The attempts to reach Mr. Whitfield were unsuccessful.

On September 19, 2006, Mr. Small made another visit to the Thomasville FSA office.  He inquired about the CRP contracts relating to the Disston Place.  The FSA provided Mr. Small with the forms used to establish the producer and eligibility information needed to participate in FSA programs.  Mr. Small stated that he would take the forms back to his office for completion by Mr. Whitfield, but the forms were never returned to the FSA.

Contract 147 expired by its terms on September 30, 2005.  This contract was marked terminated by the FSA on February 16, 2007.  The FSA also marked Contracts 305 and 306 as terminated on February 16, 2007.  The FSA informed Plaintiff by letter dated February 16, 2007 that Plaintiff was obligated to refund all annual rental payments plus interest, all costshare payments plus interest, and liquidated damages in the total amount of $21,898.80.  The appendix to the CRP

contracts contains a provision which states that if a participant transfers property subject to a contract and the new owner does not become a successor to the contract within 60 days of the transfer, or within such time as deemed appropriate by the CCC, the contract will be terminated and the original owner must refund all payments made plus interest and any liquidated damages as set out in the appendix.

After receiving the FSA's letter regarding the refund and damages, Plaintiff filed for reconsideration and subsequently met with the FSA on April 12, 2007.  The FSA upheld its demand.   The parties then mediated the matter, with the FSA ultimately adhering to its initial decision.  Plaintiff appealed the decision to the United States Department of Agriculture National Appeals Division ("NAD"), which affirmed the ruling of the FSA in a decision dated November 15, 2007.

In its decision, the NAD found as follows:  (1) that any verbal agreement between Plaintiff and Booth for Booth to succeed to the CRP contracts should have been reduced to writing prior to the closing of the sale; (2) that there was never any action by Booth as required by regulations to obtain approval from the FSA to succeed to or modify the contracts; (3) that while the FSA allowed Booth to cancel Contract 334, the cancelling of the contract did not constitute succeeding to the remaining CRP contracts; and (4) that allowing Booth to cancel Contract 334 did not harm Plaintiff because Booth incurred the required liquidated damages.

Plaintiff subsequently requested Director Review of the NAD decision.  In a decision issued on February 6, 2008, the deputy director upheld the NAD's determination.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  That burden is "discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once the movant has met this burden, the opposing party must present evidence establishing that there is a genuine issue of material fact.  Id.  In order to defeat summary judgment, the nonmoving party must respond by going beyond the pleadings, and by his own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial.  See id. at 322, 324.

7

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. Id. at 249. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

## III.   CONCLUSIONS OF LAW

### A.   Judicial review of the final decision of the National Appeals Division

Defendants argue that they are entitled to summary judgment upholding the final administrative decision issued by the NAD.  Plaintiff, on the other hand, argues that it is entitled to summary judgment reversing the NAD's decision.  Judicial review of final decisions of the NAD is to be in accordance with Chapter 7 of Title 5 of the United States Code.  7 U.S.C. § 6999.

"Summary judgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency." Mahon v. United States Dep't of Agric., 485 F.3d 1247, 1253 (11th Cir.2007). However, "even in the context of summary judgment, an agency action is entitled to

great deference." Id. (quoting Alabama-Tombigbee Rivers Coalition v. Kempthorne, 477 F.3d 1250, 1254 (11th Cir.2007)).

The Court is limited in the scope of its review of an agency action. Plaintiff has asked the Court to set aside the NAD's determination because it was arbitrary and capricious and unsupported by substantial evidence. 5 U.S.C. § 706(2)(A) and (E). The Administrative Procedures Act requires the Court to set aside any agency action that is found to be arbitrary, capricious, an abuse of discretion, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence. 5 U.S.C. § 706(2). The Court must determine "whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Sierra Club v. Johnson, 436 F.3d 1269, 1273-74 (11th Cir.2006) (internal quotation marks and citations omitted).

Plaintiff first contends that the NAD's final determination should be reversed because the FSA should have considered estoppel or other equitable relief available through the CRP, but failed to do so. Under the version of the Code of Federal Regulations relied upon by Plaintiff, the Deputy Administrator for Farm Programs, FSA, or a designee

> may provide equitable relief to a participant who has entered into a contract under this chapter, and who is subsequently determined to be in violation of the contract, if the participant, in attempting to comply with the terms of the contract and enrollment requirements, took actions in good faith reliance upon the action or advice of an

9

authorized USDA representative, as determined by the
Deputy Administrator, provided:

> (1) The Deputy Administrator determines that
> a participant has been injured by such good
> faith reliance, in which case, the participant
> may be authorized, as determined
> appropriate by the Deputy Administrator, to
> do any one or more of the following;
>
> (i)    Retain payments received under the
> contract;
>
> (ii)    Continue to receive payments under
> the contract;
>
> (iii)    Keep all or part of the land covered by
> the contract enrolled in the applicable
> program under this chapter;
>
> (iv)    Re-enroll all or part of the land covered
> by the contract in the applicable program
> under this chapter; or
>
> (v)    Any other equitable relief the Deputy
> Administrator deems appropriate.

7 CFR § 1410.54(b)(1).

Defendants have taken the position that the FSA was required to terminate
Contracts 147, 305, and 306, and in turn request refund payments and liquidated
damages from Plaintiff, because 60 days passed without another entity becoming
the successor to the contracts.  Plaintiff argues in response that equitable relief
should have been considered because the FSA "acquiesced in the passage of the
alleged 60 day deadline, did not inform Balfour of developments with Booth's

10

dealings with FSA, and it did not attempt to enforce the alleged 60 day deadline for more than two years."  (Doc. 39, p. 4).

Before addressing the parties' arguments, the Court must note that its review of the agency's decision has been complicated by the parties' apparent inability to agree on the proper version of the federal regulations applicable to this matter. Plaintiff initially made references to the 1997 and 2007 editions of the Code of Federal Regulations in its motion for summary judgment, but later in its response to Defendants' motion stated that it would apply the 2003 edition of the CFR in order to maintain the parties' stipulations from the administrative hearing.  The Court nevertheless found that the parties each presented a different version of what it believes the applicable 2003 regulations to be.  In reviewing the transcript of the administrative hearing, the Court notes that the parties agreed that the NAD's decision was governed by "the regulations at Title 7, Code of Federal Regulations, Part 1410...." (Transcript, p. 27).  The problem is that through an interim rule signed on May 2, 2003, Part 1410, the Conservation Reserve Program, was completely revised, with an effective date of May 5, 2003.  68 Fed.Reg. 24830-01, 2003 WL 21023039 (May 8, 2003).  Plaintiff relies on the pre-May 5, 2003 version of the regulations to support its position, and Defendants look to the revised regulations.

The post-May 5, 2003 regulations state that "[t]he regulations governing the CRP as of May 12, 2002, shall continue to govern contracts in effect as of that date....This part shall apply to contracts executed on or after May 13, 2002."  7 CFR

11

§ 1410.1(j).  Contracts 305 and 306 were executed on June 9, 2003, which means that the revised regulations are the applicable regulations.  The Court recognizes that Contract 147, which was executed on September 22, 1995, would be governed by a different set of regulations, but in light of the parties' stipulation that the 2003 regulations apply, the revised 2003 regulations should be applied to that contract as well.

Subsection (b) of 7 CFR § 1410.54, upon which Plaintiff relies for its equitable relief argument, was stricken from the regulation with the May 5, 2003 revisions. The Court cannot find that the FSA should have considered equitable relief for Plaintiff when such relief was not provided for under the applicable regulations. Revised § 1410.54 does, however, state that "[t]he provisions of § 718.8 of this chapter relating to performance based upon the action or advice of an authorized representative of the Department shall be applicable to this part, and may be considered as a basis to provide relief to persons subject to sanctions under this part to the extent that relief is otherwise required by this part."  While § 718.8 was revised effective March 31, 2003 to address a topic which has nothing to do with this case[5],

---

[5] Revised § 718.8, entitled "Administrative county," reads as follows:

(a) If all land on the farm is physically located in one county, the farm shall be administratively located in such county.  If there is no FSA office in the county or the county offices have been consolidated, the farm shall be administratively located in the contiguous county most convenient for the farm operator.

(b) If the land on the farm is located in more than one county, the farm shall be administratively located in either of such counties as the county committees and the farm

even if the Court considers the former version of § 718.8, it does not appear that any

equitable considerations by the FSA were required.

The former version of § 718.8 provides:

> (a)    Notwithstanding any other provision of the law, performance rendered in good faith based upon action of, or information provided by, any authorized representative of a County or State Farm Service Agency Committee, may be accepted by the Administrator, FSA (Executive Vice President, CCC), the Associate Administrator, FSA (Vice President, CCC), or the Deputy Administrator for Farm Programs, FSA (Vice President, CCC), as meeting the requirements of the applicable program, and benefits may be extended or payments may be made therefor in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment.

> (b)    The provisions of this section shall be applicable only if a producer relied upon the action of a county or State committee or an authorized representative of such committee or took action based on information provided by such representative.  The authority provided in this part does not extend to cases where the producer knew or had sufficient reason to know that the action or advice of the committee or its authorized representative upon which they relied was improper or erroneous, or where the producer acted in reliance on their own misunderstanding or misinterpretation of program provisions, notices, or advice.

---

operator agree.  If no agreement can be reached, the farm shall be administratively located in the county where the principal dwelling is situated, or where the major portion of the farm is located if there is no dwelling.

(c) The State committee shall submit all requests to deviate from regulations specified in this section to the Deputy Administrator.

For this regulation to be applicable, Plaintiff would have to show that it acted in good faith in response to the action of, or information provided by, an FSA representative to meet the requirements of the CRP program, or in other words, that an FSA representative incorrectly advised Plaintiff on how to maintain CRP eligibility.  Plaintiff, however, has not provided the Court with evidence of any advice or information from the FSA that it relied upon, whether rightly or wrongly.  In any event, Plaintiff knew or had reason to know through the appendix attached to the contracts that if it sold the property and the contracts were not succeeded to within 60 days of the sale, the contracts would be terminated and Plaintiff would be required to pay certain amounts to the FSA.

The equitable relief Plaintiff refers to in its briefs is not available to it, as the applicable regulation no longer contains the provision allowing for the relief and because Plaintiff has presented no evidence that it performed in any manner based upon the action or advice of an FSA representative.  A review of the revised 2003 regulations does not reveal any other basis for equitable relief.  The Court cannot find that the NAD's decision that the contracts had to be terminated because the new owner did not become a successor to the contract within 60 days of the sale is not in accordance with the law.  In fact, 7 CFR § 1410.51(b) specifically requires the FSA to terminate contracts to which the new owner does not succeed.  ("If a participant transfers all or part of the right and interest in,...land subject to a CRP contract and the new owner or operator does not become a successor to such

14

contract within 60 days, or such other time as the Deputy Administrator determines to be appropriate, of such transfer, such contract **shall be terminated**....") (emphasis added).

According to Plaintiff, the true issues in this case are whether allowing Booth to cancel Contract 334 without Plaintiff's permission amounted to Booth becoming a successor to all four CRP contracts and whether allowing Booth to cancel Contract 334 should relieve Plaintiff of any obligations with respect to Contracts 147, 305, and 306. The NAD determined that while it may have been improper for the FSA to allow Booth to cancel Contract 334 without formally accepting it as the successor to that contract, this did not change the fact that the FSA did not approve Booth as a successor in interest to the other three contracts, which were separate contracts. Plaintiff believes that the NAD's final determination should be reversed because it failed to consider that the CRP contracts were not, as suggested by the FSA, separate and distinct contracts, and that to the extent the final determination accepted the reasoning that the contracts were separate contracts, the agency action runs counter to the evidence.

In a Fifth Circuit decision, that court held that when agency decisions are challenged under the "arbitrary and capricious" standard, the burden is on the challenging party, and to carry this burden the challenging party must show that the agency's decision was either not based on a consideration of the relevant factors or amounted to a clear error of judgment. *See* Ward v. Campbell, 610 F.2d 231, 235

(5th Cir.1980).  A finding that the agency's action is arbitrary and capricious would require the court to find that there is no rational basis for the decision.  <u>Tackitt v. Prudential Ins. Co. of America</u>, 758 F.2d 1572, 1575 (11th Cir.1985).  If the court determines that a rational connection exists between the evidence and the decision, then the court will defer to the expertise of the agency.  <u>Id.</u>

The Court finds that the NAD's final decision was not arbitrary or capricious or unsupported by substantial evidence.  "The substantial evidence test is no more than a recitation of the application of the arbitrary and capricious standard to factual findings."  <u>Fields v. United States Dep't of Labor Review Board</u>, 173 F.3d 811, 813 (11th Cir.1999) (internal quotation marks omitted).  The evidence before the Court is that the four CRP contracts were separate contracts and separate action had to be taken for each.  Plaintiff was on notice that if it transferred land subject to a CRP contract and the new owner did not succeed to the new contract within 60 days of the sale, the contract would be terminated and Plaintiff would be responsible for making various reimbursement payments.  While Mr. Lee may have told someone with the FSA that Booth intended to assume the contracts, Booth never completed the process to succeed to Contracts 147, 305, and 306.  For the NAD to find that the cancellation of Contract 334 had no effect on Plaintiff's obligations under the other three contracts is not arbitrary or capricious or against the evidence.  It appears that the FSA and NAD appropriately applied the agency's regulations with regard to Contracts 147, 305, and 306, for which the FSA now seeks reimbursement.

16

Therefore, the Court grants Defendants' motion for summary judgment, denies Plaintiff's motion for summary judgment, and upholds the administrative decision.

### B.    Equitable estoppel and unclean hands

Plaintiff contends that the NAD's final determination should be reversed because the NAD director failed to consider and examine the doctrines of unclean hands and estoppel.  This is based on the FSA allowing Booth to cancel Contract 334 in violation of the FSA's rules, regulations, and guidelines.  Plaintiff asks that the FSA be permanently enjoined from implementing or enforcing the final determination or requiring Plaintiff to pay the reimbursement payments, liquidated damages, and interest payments.  Defendants have moved for summary judgment in their favor on the equitable estoppel and unclean hands claims, taking the position that equitable estoppel cannot apply against the government in a suit to recover public funds, and that an unclean hands argument fails if the Court upholds the NAD's final determination.

The Eleventh Circuit has set out a three-part analysis to determine whether estoppel should apply against the United States government:  (1)  the traditional private law elements of estoppel must have been present; (2) the Government must have been acting in its private or proprietary capacity as opposed to its public or sovereign capacity; and (3) the Government's agent must have been acting within

17

the scope of his or her authority.[6] <u>United States v. Vonderau</u>, 837 F.2d 1540, 1541 (11th Cir.1988).

Plaintiff must prove four elements to support an equitable estoppel claim: "(1) words, conduct, or acquiescence that induced reliance; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; (3) detrimental reliance; and (4) affirmative misconduct by the government." <u>United States v. McCorkle</u>, 321 F.3d 1292, 1297 (11th Cir.2003). Affirmative misconduct requires more than governmental negligence or inaction. <u>Id.</u> Plaintiff argues that the willfulness or negligence prong is met because Booth was improperly allowed to cancel Contract 334, but Plaintiff has not demonstrated anything beyond negligence or oversight on the part of the FSA, which is insufficient establish an estoppel claim. No evidence of affirmative misconduct on the part of the FSA has been presented by Plaintiff. Further, Plaintiff has not directed the Court to any words or conduct on the part of the FSA directed at Plaintiff that it relied upon to its detriment. As Plaintiff cannot meet the requirements for an equitable estoppel claim, Defendants are entitled to summary judgment on Plaintiff's request for equitable estoppel. Defendants are also entitled to summary judgment on Plaintiff's request for a reversal based on the

---

[6] The Eleventh Circuit has questioned whether estoppel can even be applied against the Government. In <u>Savoury v. U.S. Attorney General</u>, 449 F.3d 1307, 1318 (11th Cir.2006), the court stated that "it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency. The Supreme Court has never held that it may be."

doctrine of unclean hands in light of the Court's decision that the NAD's final determination should be upheld.

### C.   Declaratory judgment

Plaintiff has moved pursuant to 28 U.S.C. § 2201 for a declaration that the NAD's final determination shall not be implemented or enforced.  In light of the Court's determination that the NAD's decision was not arbitrary or capricious or otherwise against the law, Defendants are entitled to summary judgment on Plaintiff's request for declaratory judgment.

### D.   Intentional interference with contractual relations

Plaintiff contends that the FSA or its employee, Ms. Dunbar, intentionally interfered with its CRP contract by knowingly allowing a person or entity who was not a party to the contracts, in this case Booth, to cancel Contract 334.  As a result of this intentional interference with contractual relations, Plaintiff contends that it has suffered monetary damages.

The United States has been substituted as the party defendant in place of Clara Dunbar pursuant to the Westfall Act, 28 U.S.C. § 2679.  This act immunizes federal employees from liability for torts committed within the scope of their employment.  When a federal employee commits such a tort, any private remedy for the tort must be sought against the United States under the Federal Tort Claims Act ("FTCA").  28 U.S.C. §§ 1346(b), 2672.  In light of the Westfall substitution, Plaintiff's

tort and negligence claims are now deemed a tort action against the United States under the FTCA.

The doctrine of sovereign immunity bars suit against the United States without its consent.  The waiver of sovereign immunity must be unequivocally expressed, and Congress in fact expressed a limited waiver in the FTCA, which provides in part that:

> [T]he district courts...shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

This paragraph is a general waiver of the United States' sovereign immunity. Some of the waiver, however, is taken back in the "Exceptions" section of the FTCA, which provides in part that the § 1346(b) waiver "shall not apply to...[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or **interference with contract rights**...."[7]  28 U.S.C. § 2680(h) (emphasis added).

----

[7]While 28 U.S.C. § 2680(h) does contain a proviso which includes certain claims within the waiver of sovereign immunity, the proviso relates only to specified claims against federal investigative or law enforcement officers and is not applicable to this case.

An intentional interference with contractual relations claim is expressly exempted from the FTCA.[8]  This means that the United States and its agencies continue to have sovereign immunity from this claim.  Because sovereign immunity is not waived for the intentional interference with contractual relations claim, the Court lacks subject matter jurisdiction to consider that claim.  *See* JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C., 224 F.3d 1260, 1264 (11th Cir.2000) ("If the alleged conduct falls within one of these statutory exceptions [to the consent to be sued], the court lacks subject matter jurisdiction over the action.").  Accordingly, Plaintiff's intentional interference with contractual relations claim is dismissed for lack of subject matter jurisdiction.[9]

### E.    Intentional breach of contract

Plaintiff's next claim is for intentional breach of contract.  According to Plaintiff, as a party to the CRP contracts, the FSA or its employee, Ms. Dunbar, breached the contracts by allowing Booth, a non-party, to cancel Contract 334.  Plaintiff states that as a result of Ms. Dunbar's intentional breach of contract, it has been damaged in the amount of $21,898.80.

_____

[8]A number of courts have held that a claim for interference with contractual relations is not within the scope of the FTCA, including the Eighth Circuit, Selland v. United States, 966 F.2d 346 (1992), Ninth Circuit, Goodman Group, Inc. v. Dishroom, 679 F.2d 182 (1982), and Third Circuit, Small v. United States, 333 F.2d 702 (1964).

[9]"A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."  Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir.1985).

The Tucker Act, 28 U.S.C. § 1346(a), waives sovereign immunity for some suits against the United States based on claims founded upon an express or implied contract.  Under the Tucker Act, the district courts have concurrent jurisdiction with the United States Court of Federal Claims for claims not exceeding $10,000.  The Court of Federal Claims has exclusive jurisdiction over contract claims against the United States where the claim exceeds $10,000.  *See* 28 U.S.C. § 1491(a)(1); Friedman v. United States, 391 F.3d 1313, 1315 (11th Cir.2004); Enlow v. United States, 161 Fed.Appx. 837, 841 (11th Cir.2006) (unpublished) (holding that the district court lacked jurisdiction to hear a breach of contract claim where the claim was for $2 million).

Since Plaintiff's claim exceeds $10,000, jurisdiction over the breach of contract claim lies exclusively in the Court of Federal Claims.  This Court does not have subject matter jurisdiction over Plaintiff's breach of contract claim, and it is hereby dismissed.

### F.   Negligence

Plaintiff's final tort claim is one for negligence.  According to Plaintiff, Defendants were negligent in their failure to document that Booth became a successor in interest prior to allowing Booth to cancel Contract 334, or in the alternative, they were negligent in allowing Booth to cancel Contract 334.  Plaintiff contends that it has suffered monetary damage as a result of this alleged negligence.

In their motion for summary judgment, Defendants have asked the Court to dismiss Plaintiff's negligence claim because Plaintiff failed to exhaust its administrative remedies as required by 28 U.S.C. § 2675(a).  Plaintiff states in response that it did not have an opportunity prior to filing its complaint to submit the administrative claim under § 2675(a) because it was not until the United States substituted itself as a defendant that it was first admitted that Ms. Dunbar was acting within the course and scope of her employment during the events that gave rise to the claims of negligence.

While a Westfall Act certification carries a rebuttable presumption that the employee has absolute immunity from suit and that the United States is to be substituted as the defendant, Plaintiff has not sought to rebut the certification's claim that Ms. Dunbar was working within the scope of her employment when the actions relating to the CRP contracts were taken.  Upon substitution of the United States, the Westfall Act provides that the action "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions."  28 U.S.C. § 2679(d)(4).

The FTCA provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office

23

> or employment, unless the claimant shall have first
> presented the claim to the appropriate Federal agency and
> his claim shall have been finally denied by the agency in
> writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

The fact that Plaintiff allegedly did not know that Ms. Dunbar was acting within the scope of her employment until the Westfall certification was filed and the United States was substituted as a defendant does not relieve Plaintiff of its obligation to exhaust its administrative remedies. In the highly publicized case of Wilson v. Libby, 535 F.3d 697 (D.C.Cir. 2008), where former CIA operative Valerie Plame Wilson and her husband, Joseph Wilson, sued the United States, former Vice President Cheney, and others for publicly disclosing Mrs. Wilson's covert operative status, the plaintiffs alleged a tort claim for public disclosure of private facts. With respect to that claim, the United States made a certification pursuant to the Westfall Act that the individual defendants were acting within the scope of their employment as employees of the United States at the time of the conduct alleged in the amended complaint. The circuit court stated that while the certification carries a rebuttable presumption that the employee has absolute immunity and that the United States is to be substituted as a defendant, "[i]f the presumption is not rebutted in this case, the case must be dismissed because the Wilsons have not exhausted their administrative remedies as required to pursue a claim against the United States pursuant to the Federal Tort Claims Act." Id. at 711 (citation omitted). Unlike Plaintiff in this case, the Wilsons

24

sought to rebut the certification's claim that the defendants were working within the scope of their employment.  The circuit court ultimately found that the defendants were acting within the scope of their employment when the disclosure of Ms. Wilson's identity was made, which meant that the certification was proper and the United States was to be substituted as a defendant.  Since the plaintiffs failed to exhaust their administrative remedies under the FTCA for the tort claim, the court upheld the district court's dismissal of the amended complaint.  Id. at 712-713.  The fact that the United States was a substituted defendant under the Westfall Act had no effect on the court's decision that exhaustion was required.[10]

The requirement that the claimant first present its claim to the appropriate agency is jurisdictional and cannot be waived.  Lykins v. Pointer, Inc., 725 F.2d 645 (11th Cir.1984).  The exhaustion requirement applies to cases in which the United States is substituted as the party defendant.  28 U.S.C. § 2679(d)(4).  Plaintiff did not rebut the certification or show that any exception to Westfall immunity should apply to this case.[11]  There is no question that Plaintiff did not exhaust its administrative

_____

[10]Other cases where the court has dismissed a tort claim for failure to exhaust administrative remedies after a Westfall substitution of the United States as a defendant has been made include Rector v. United States, 243 Fed.Appx. 976 (6th Cir.2007) (unpublished), Singleton v. United States, 277 F.3d 864 (6th Cir.2002), Lumarse, Inc. v. Dep't of Health and Human Servs., 191 F.3d 460 (9th Cir.1999), and Sullivan v. United States, 21 F.3d 198 (7th Cir.1994).

[11]There are two exceptions to the immunity provided by the Westfall Act.  The United States cannot be substituted as a defendant for claims against federal employees brought for violation of the United States Constitution, 28 U.S.C. § 2679(b)(2), or for the violation of a federal statute, 28 U.S.C. § 2679(b)(2)(B).

remedies as to the negligence claim as required by the FTCA.  Plaintiff's negligence claim must be dismissed for lack of subject matter jurisdiction.

### G.    Attorney's fees and costs of litigation

As the Court has found that Defendants are entitled to summary judgment on Plaintiff's claims, or in the alternative, that Plaintiff's claims must be dismissed for lack of jurisdiction, Defendants' motion for summary judgment on Plaintiff's request for attorney's fees and other expenses is granted.

## IV.    CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment (Docs. 29 and 41), and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 31).  Plaintiff's Request for Oral Argument (Doc. 45) is denied as moot.


**SO ORDERED**, this the 22nd day of June, 2009.

*s/   Hugh Lawson*

**HUGH LAWSON, SENIOR JUDGE**

mbh